IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND
(SOUTHERN DIVISION)

| | |
|---|---|
| JONATHAN E. DOWLING, INDIVIDUALLY AND AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF J.A.D. (A MINOR), *ET AL.* | |
| **Plaintiffs** | Civil Action No. 8:18-cv-00117-PX |
| **v.** | |
| A.R.T. INSTITUTE OF WASHINGTON, INC., *ET AL.* | |
| **Defendants** | |

MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL
SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION TO DISMISS
AND/OR FOR SUMMARY JUDGMENT

### TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................. 1

   A. Motion for Partial Summary Judgement ........................................... 2

   B. Response to Defendants' Motion to Dismiss and/or for Summary Judgement ............. 2

II.  STATEMENT OF FACTS ....................................................................... 3

   A. Overview of Facts .................................................................... 3

   B. Undisputed Material Facts for Partial Summary Judgement .................................. 5

   C. Disputed Material Facts Precluding Summary Judgment ....................................... 5

III.  STANDARD OF REVIEW ..................................................................... 6

   A. Motion to Dismiss .................................................................... 6

   B. Motion for Summary Judgement ......................................................... 6

IV.  ARGUMENT ........................................................................................ 7

   A. Defendants are not covered by Plaintiffs' settlement agreement with the government under the Federal Tort Claims Act (FTCA). ......................................................... 7

      1. Plaintiff's FTCA settlement agreement is interpreted under federal law. ............... 7

      2. The FTCA settlement agreement does not release claims against the Defendants. .... 7

i

a.  As a matter of law, the Department of Justice lacks authority to enter into a FTCA settlement agreement that covers independent contractors. ............................................. 8

b.  By its own terms, the FTCA settlement agreement only applies to the United States of America, and its agents, servants, and employees. .................................................... 8

3.  Defendants lack standing to enforce the FTCA settlement agreement. .............. 9

B. Defendants are not entitled to contribution from the FTCA settlement agreement. ........ 9

1.  The government is not a joint tortfeasor because it did not admit liability in the FTCA settlement agreement. ................................................................................. 10

2.  The government is not a joint tortfeasor because it does not share common liability with Defendants. .................................................................................... 11

a.  Defendants do not share common liability with the government for the Maryland claims because the government is immune under the *Feres* doctrine. ............................... 11

b.  Defendants do not share common liability with the government for the Washington wrongful birth claim because they are not liable for the same damages. ............................ 12

3.  There is no right to contribution under federal common law. ........................... 13

C. Defendants' asserted defenses fail as a matter of law. ........................................ 14

1.  The government's acts or omissions were not a superseding cause. .................... 14

a.  Defendants have not alleged how government employees were negligent in relying on Defendants' determination to use a particular fertilization procedure. ........................... 14

b.  Defendants' defense based on the failure to timely diagnose J.A.D.'s birth defects infringes upon a woman's right to choose whether to carry a pregnancy to term. .................. 15

2.  Defendant A.R.T. cannot assert the statute of limitations as a defense. ............... 16

3.  J.A.D.'s survival claim is tolled by the Servicemembers' Civil Relief Act. ........... 17

D. Defendant A.R.T. breached the duty to obtain informed consent by failing to provide information material to Plaintiff's decision to consent to ISCI. ...................................... 17

1.  The duty to provide informed consent is owed by healthcare providers, not just physicians, under Maryland law. ....................................................................... 17

2.  Defendant A.R.T. assumed the duty to obtain informed consent. ....................... 19

a.  Defendant A.R.T. is estopped from asserting that it does not have a duty to obtain informed consent. ....................................................................................... 20

b.  Defendant A.R.T. selected the ICSI fertilization procedure. .......................... 21

3.  Defendant A.R.T. breached the duty to obtain informed consent. ...................... 22

a.  Defendant A.R.T. failed to provide material information concerning ICSI on the 2011 Consent Form. ................................................................................... 22

b.  Defendant A.R.T. failed to provide material information when it presented the July 6, 2012 Semen Collection and Analysis Form. ......................................................... 23

    i. Undisputed material facts demonstrate that Defendant A.R.T. breached the duty to obtain informed consent from Plaintiff. ................................................................. 24

    ii. The only dispute of material fact does not alter the conclusion that Defendant A.R.T. breached the duty to obtain informed consent. ................................................... 24

   4. Defendant A.R.T. proximately caused Plaintiffs' damages. ............................. 26

  E. Maryland law recognizes Plaintiffs' wrongful death claim and survival action. .......... 28

   1. Failure to obtain informed consent is as wrongful act. ..................................... 28

   2. The duty to obtain informed consent extends to intended beneficiaries. ............... 28

   3. Maryland recognizes that a child born alive can maintain an action for a tort that impacts any part of that child's prenatal life. ............................................................. 30

   4. A certificate of a qualified expert is not required for informed consent claims. ....... 32

   5. J.A.D.'s survival action is not a claim for wrongful life. .................................. 32

   6. J.A.D.'s survival action is timely filed. ....................................................... 33

  F. Defendants committed negligently misrepresentation to secure Plaintiff's consent for ICSI on the July 6, 2012 Semen Collection and Analysis Form. ..........................................…... 33

  G. Defendants committed constructive fraud to secure Plaintiff's consent for ICSI on July 6, 2012 Semen Collection and Analysis Form. ............................................................. 34

V.  CONCLUSION ................................................................................... 35

## INDEX OF COMPLAINT EXHIBITS

A.   Plaintiffs' Unilateral Waiver of Arbitration

B.   HCADRO Transfer Order

C.   Defendant A.R.T.'s 2012 ART Cycle Profile and Success Rates

D.   Defendant A.R.T.'s 2012 Government Contract (excerpts)

E.   SART Guidelines

F.   Defendant A.R.T.'s 2011 Consent Form

G.   Article: Adverse Effect of Paroxetine on Sperm

H.   July 6, 2012 Semen Analysis and Collection Form

I.   March 15, 2012 Semen Analysis Report

J.   February 14, 2013 email exchange with LCDR Chason

K.   Dr. Margaret Adam, MD - Opinion without exhibits

L.   FTCA Denial of Claims

M.   FTCA Settlement Agreement (redacted)

N.   2010 World Health Organization Semen Manual (excerpts)

O.   Defendant A.R.T.'s 2015 Consent Form

P.   Defendant A.R.T.'s 2016 Operating Agreement

iv

## INDEX OF MOTION EXIHIBTS

1.   Declaration of Jonathan Dowling

2.   Defendant A.R.T.'s 2000 ICSI Consent Form

3.   Pregnancy Results and Notification

4.   Sperm DNA Integrity (TUNEL) Test Results (Cornell)

5.   DNA Fragmentation Result (University of Washington)

6.   Dr. Margaret Adam, M.D., Declaration and Opinion with exhibits (redacted)

7.   Article: Reproductive Technologies and the Risk of Birth Defects

8.   Article: Meta-analysis of sperm DNA fragmentation using the sperm chromatin structure assay

9.   Article: DNA fragmentation of normal spermatozoa negatively impacts embryo quality and intracytoplasmic sperm injection outcome

10.   Article: Is sperm DNA damage associated with IVF embryo quality? A systematic review

11.   Email correspondence with Ms. Hilda Perlstein (Government Attorney)

12.   Government's Answer in Dowling et al. v. United States of America

13.   Defendant A.R.T.'s Frequently Asked Questions

14.   Defendant A.R.T.'s HCADRO Memorandum for Motion to Dismiss, or in the alternative, for More Definite Statement

15.   Plaintiff's HCADRO Opposition to Defendant A.R.T.'s Memorandum for Motion to Dismiss, or in the alternative, for More Definite Statement

16.   HCADRO Order Denying Defendant A.R.T.'s Motion to Dismiss, or in the alternative, for More Definite Statement

17.   DOJ Bulletin Article, Personal Liability Tort Litigation Against Federal Employees

18.   Defendant A.R.T.'s 2011 Qualification as Maryland Foreign Corporation

19.   Defendant A.R.T.'s 2013 Revocation of Corporate Status in District of Columbia

20.   Defendant A.R.T.'s 2013 Forfeiture as Maryland Foreign Corporation

21.   J.A.D.'s Clinic Note – October 23, 2013

**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND**
**(SOUTHERN DIVISION)**

| | |
|---|---|
| **JONATHAN E. DOWLING, INDIVIDUALLY AND AS THE PERSONAL REPRESENTATIVE OF THE ESTATE OF J.A.D. (A MINOR),** *ET AL.* | |
| **Plaintiffs** | Civil Action No. 8:18-cv-00117-PX |
| v. | |
| **A.R.T. INSTITUTE OF WASHINGTON, INC.,** *ET AL.* | |
| **Defendants** | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT**

I, Plaintiff Jonathan E. Dowling, individually and as a surviving parent of J.A.D., a deceased minor, and in my capacity as the personal representative of the Estate of J.A.D., submit the this Memorandum in support of Plaintiffs' Motion for Partial Summary Judgment and Response to Defendants' Motion to Dismiss and/or for Summary Judgment submitted by Defendant A.R.T. Institute of Washington, Inc. (Defendant A.R.T.) and Defendant Erika Cullingford (Defendant Cullingford).

**I.  INTRODUCTION**

On August 18, 2013, as J.A.D. recovered from his second open heart surgery, I promised him that I would hold accountable all those responsible for his pain and suffering. Ex. 1 (Declaration of Jonathan Dowling), ¶ 2. Instead of accepting responsibility for their acts and omissions, Defendants have taken the shocking position that they owe no duty to a child that they were purposefully trying to conceive with artificial reproductive technology. Defendants

1

create life yet they refuse to accept responsibility when their negligence causes the death of a child that they conceived. This Court's opinion will hopefully serve as a published landmark decision to protect all children conceived by artificial reproductive technology.

## A. Motion for Partial Summary Judgement

Plaintiffs are entitled to partial summary judgement on Count I, which pertains to whether Defendants are covered under Plaintiffs' settlement agreement with the United States, and whether they are entitled to any contribution from such agreement. Plaintiffs' settlement agreement does not apply to the Defendants because it only covers claims cognizable under the Federal Tort Claims Act. Defendants are not entitled to contribution from the settlement agreement because the government is not a joint tortfeasor.

Plaintiffs are entitled to partial summary judgement on Defendants' asserted defenses concerning superseding causes and the statute of limitations. First, with respect to Defendants' defense that the government's failure to timely diagnose J.A.D.'s birth defects was a superseding cause, allowing such a defense would impermissibly infringe upon a woman's right to choose whether to continue a pregnancy to term. Second, Defendants may not assert the statute of limitations pursuant to MD. CODE ANN., CTS. & JUD. PROC. § 5-204.

## B. Response to Defendants' Motion to Dismiss and/or for Summary Judgement

Defendants' Motion to Dismiss and/or for Summary Judgment should be denied. Counts II through VIII are legally and factually sufficient.[1] Moreover, each of these counts involve a dispute of material fact that precludes summary judgment.

---

[1] Walter Reed National Military Medical Center, the situs of Defendants' negligence, is subject to exclusive federal jurisdiction and has been since 1938. Because Counts II through VIII involve injury and/or death, Maryland law is still controlling pursuant to 16 U.S.C. § 457, which was repealed and replaced in 2014 by 28 U.S.C. § 5001. *Colon v. United States*, No. GJH-17-775, 2018 U.S. Dist. LEXIS 42761, at 27-28 (D. Md. Mar. 13, 2018).

For Count II (Lack of Informed Consent), Defendant A.R.T. contractually assumed the duty to obtain informed consent for the laboratory portions of the fertilization procedures. Defendant A.R.T. failed to provide information that was material to Plaintiffs' decision whether to use intracytoplasmic sperm injection (ICSI) to conceive J.A.D.

For Count III (Wrongful Death – Lack of Informed Consent) and Count IV (Survival Action – Lack of Informed Consent), Defendant A.R.T. owed a duty to J.A.D. as the intended beneficiary of the informed consent that should have been obtained from Plaintiff. Maryland recognizes that J.A.D., a child born after an injury or impact of a tort sustained during his prenatal life as an embryo (i.e., performing ICSI without informed consent), has a right to recover for a tort that started prior to, but that was completed during or after, the fertilization of the embryo. Additionally, J.A.D.'s survival action was timely filed under state and federal law.

For Counts V and VI (Negligent Misrepresentation), Defendants made statements that were false or that were materially misleading by virtue of material facts that Defendants negligently failed to disclose. For Counts VII and VIII (Constructive Fraud), Defendants had a confidential relationship with Plaintiffs enabling them to commit constructive fraud.

Therefore, Plaintiffs should be awarded partial summary judgment and Defendants' Motion to Dismiss and/or for Summary Judgment should be denied.

## II. STATEMENT OF FACTS

### A. Overview of Facts

Defendant A.R.T. provides embryology services, including in vitro fertilization (IVF) and intracytoplasmic sperm injection (ICSI), to the Walter Reed National Military Medical Center (WRNMMC) Division of Reproductive, Endocrinology, and Infertility. Ex. 1, ¶4. IVF involves sperm being placed in a glass dish where one of those sperm fertilizes an egg through a measure

3

of natural selection. *Id.* With ICSI, an embryologist selects a single sperm and uses a pipette to inject the sperm into the egg to achieve fertilization thereby bypassing natural selection mechanisms. *Id.* Defendant A.R.T. charges more money from patients who use IVF with ICSI as compared to patients who use IVF without ICSI. Ex. 1, ¶6. Since Defendant A.R.T. incorporated in 2000, the percentage of Defendant A.R.T.'s patients using ICSI increased from 27%[2] in 2001 to 81% in 2012. Ex. 1 ¶¶6-7; Compl. Ex. C.

In 2012, Defendant A.R.T. provided artificial fertilization services to Plaintiff and his civilian spouse, Kathryn Dowling (Mrs. Dowling, collectively, the Dowlings) at WRNMMC to conceive J.A.D. Ex. 1, ¶12. J.A.D. was born in April 2013 with severe birth defects involving his heart and abdominal wall that ultimately resulted in his death almost seven months later on October 26, 2013. Ex. 1, ¶¶50-56; Ex. 6 (Declaration of Dr. Margaret Adam, MD). Defendants caused J.A.D.'s fatal birth defects by failing to obtain Plaintiff's informed consent to use ICSI, an artificial fertilization procedure that circumvents natural selection and has greater risks than standard IVF, and by negligently and/or fraudulently misrepresenting Plaintiff's semen analysis results to obtain or affirm consent for using ICSI. Ex. 1; Ex. 6.

Defendants, among other failures to obtain informed consent, falsely informed Plaintiff that his semen sample provided on the day of fertilization, July 6, 2012, was of ICSI standards due to low initial motility. Ex. 1, ¶34. Defendants failed to inform Plaintiff that his initial sperm motility measurement on July 6, 2012 was actually above Defendant A.R.T.'s threshold for using ICSI. Ex. 1, ¶82. Had material information been disclosed, Plaintiff would not have consented or affirmed consent to use ICSI to attempt fertilization. Ex. 1, ¶84-93. As a consequence of

---

[2] This is a correction from the Complaint. The Complaint stated 21%, but the 2001 CDCP excel sheet actually states 27% for percentage of Defendant A.R.T.'s patients using ICSI.

4

Defendants' actions and omissions, the embryo that became J.A.D. was fertilized through ICSI and implanted in Mrs. Dowling. Ex. 1, ¶38-40; Ex. 3 (Results). Dr. Margaret Adam, MD, J.A.D.'s attending physician/pediatric geneticist at Seattle Children's Hospital, opined that using ICSI was the most probable cause of J.A.D.'s fatal birth defects. Ex. 6.

**B. Undisputed Material Facts for Summary Judgement**

On November 25, 2015, Plaintiffs, through counsel, filed an amended complaint against the United States of America (the government) under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 – 2680, for medical malpractice occurring in the State of Maryland (Count I: Informed Consent, Count II: Survival Action Informed Consent) and the State of Washington (Count III: Wrongful Birth). Memorandum of Law in Support of Defendants' Motion to Dismiss and/or for Summary Judgment (Defendants' Memorandum for MTD/MSJ), Ex. 7 (Complaint - Dowling, et al. v. United States of America). In an Answer filed on February 4, 2016, the government asserted, citing *Feres v. United States*, 340 U.S. 135 (1950), that the "lack of informed consent and survival action are not actionable as the injuries alleged arise out of activity incident to Plaintiff LCDR Dowling's military service." Ex. 12 at 14 (Government's Answer). On June 22, 2016, Plaintiffs settled with the government pursuant to 28 U.S.C. § 2677. Compl. Ex. M. In this settlement agreement, the government denied liability and did not waive application of the *Feres* doctrine for the Maryland claims. *Id.* Defendant A.R.T. is an independent contractor. Compl. Ex. D.

Additionally, in 2013, Defendant A.R.T did not file a property return in Maryland, and the District of Columbia revoked it status as a corporation. Exs. 18, 19, & 20.

**C. Disputed Material Facts Precluding Summary Judgment**

The facts involving a genuine dispute of material fact are addressed in this Memorandum,

5

attached exhibits, and exhibits attached in Plaintiffs' Complaint. Any other facts not specifically admitted herein or in the Complaint are hereby disputed.

## III. STANDARD OF REVIEW

### A. Motion to Dismiss

A motion to dismiss filed under Federal Rule of Civil Procedure (Fed. R. Civ. P.) 12(b)(6) tests the legal sufficiency of a complaint. When evaluating a 12(b)(6) motion to dismiss, a plaintiff's well-pleaded allegations are accepted as true and the complaint is viewed in the light most favorable to the plaintiff. Accordingly, a court "must accept as true all of the factual allegations contained in the complaint" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *see Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017). A pro se plaintiff's pleadings are "to be liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *see Alley v. Yadkin County Sheriff Dep't*, No. 17-1249, 698 Fed. Appx. 141 (4th Cir. Oct. 5, 2017).

### B. Motion for Summary Judgement

"A party may move for summary judgment, identifying each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a); *Rotorex Co. v. Kingsbury Corp.*, 42 F. Supp. 2d 563, 570-71 (D. Md. 1999). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The facts themselves,

and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party. *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008).

## IV. ARGUMENT

This Court should grant Plaintiffs' motion for partial summary judgment and find that Plaintiffs' settlement agreement with the government does not apply to Defendants, that Defendants are not entitled to any contribution from Plaintiffs' settlement agreement with the government, and that Defendants' asserted defenses fail as a matter of law. This Court should also deny Defendants' Motion to Dismiss and/or for Summary Judgment.

**A. Defendants are not covered by Plaintiffs' settlement agreement with the government under the Federal Tort Claims Act (FTCA).**

**1. Plaintiff's FTCA settlement agreement is interpreted under federal law.**

Federal common law, not Washington state law as asserted by Defendants, controls the interpretation of Plaintiffs' settlement agreement with the United States under the FTCA. *Chaplin v. Nationscredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) ("Federal common law controls the interpretation of a release of federal claims."). "In determining whether federal common law controls the interpretation of settlement agreements resolving federal claims and to which the federal government is a party, the crux of the inquiry hinges on the implication of federal interests." *Thompson v. United States HUD*, No. 95-309-MJG, 2016 U.S. Dist. LEXIS 145962, at 11-12 n.2 (D. Md. Oct. 21, 2016) (citing *United States v. Schlesinger*, 88 F. Supp. 2d 431, 440 (D. Md. 2000)). The FTCA settlement agreement was executed by a representative of the United States and pertains to the settlement of claims brought exclusively under the FTCA. The government has an interest in the uniform interpretation of FTCA settlement agreements under federal common law.

7

**2. The FTCA settlement agreement does not release claims against the Defendants.**

      **a. As a matter of law, the Department of Justice lacks authority to enter into a FTCA settlement agreement that covers independent contractors.**

The Plaintiffs' FTCA settlement agreement with the government was a "release of Federal Tort Claims Act claims pursuant to 28 U.S.C. § 2677." Compl. Ex. M. This statutory authority provides that the "Attorney General or his designee may arbitrate, compromise, or settle any claim cognizable under section 1346(b) of this title, after the commencement of an action thereon." 28 U.S.C. § 2677. Claims against independent contractors are not cognizable claims under 28 U.S.C. § 1346(b). "The FTCA explicitly <u>excludes</u> independent contractors from its scope." *In re KBR, Inc. Burn Pit Litig.*, 736 F. Supp. 2d 954, 963 (D. Md. 2010) (emphasis in original); *see also* 28 U.S.C. § 2671. Defendant A.R.T. is an independent contractor, and Defendant Cullingford was an employee of Defendant A.R.T. in 2012. Compl. Ex. D; Ex. 13 (Defendant A.R.T.'s FAQs), ¶2. Thus, as a matter of law, the FTCA settlement agreement does not apply to the Defendants because the Department of Justice does not have authority to settle claims against independent contractors.

      **b. By its own terms, the FTCA settlement agreement only applies to the United States of America, and its agents, servants, and employees.**

By its own terms, the FTCA settlement agreement applies to the United States of America and "all persons, in their individual or official capacities," which is a phrase that only covers government employees who may be sued in either their individual or official capacity. Compl. Ex. M, ¶1; Ex. 17 (United States Attorney Bulletin Article). The "full settlement and satisfaction of any and all claims" under the FTCA settlement agreement only applies to claims "against the United States, its agents, servants, and employees." Compl. Ex. M, ¶2. As an independent contractor or an employee thereof, Defendants are not agents, servants, or

8

employees of the United States. Moreover, the FTCA settlement agreement specifically

recognizes that Plaintiffs may pursue "further litigation or the prosecution of claims [...] against

any third party" including the Defendants. *Id.*, ¶3.

### 3. Defendants lack standing to enforce the FTCA settlement agreement.

Defendants lack standing to enforce the FTCA settlement agreement because they were

not parties or intended beneficiaries of such agreement. Even if Defendants were intended

beneficiaries, which they are not, only the government would have standing to enforce the terms

of the FTCA settlement agreement. *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C.

Cir. 1993) ("Only the Government can seek enforcement of its consent decrees, *see, e.g., Dahl,*

*Inc. v. Roy Cooper Co., Inc.*, 448 F.2d 17, 20 (9th Cir. 1971); therefore, even if the Government

intended its consent decree to benefit a third party, that party could not enforce it unless the

decree so provided.").

### B. Defendants are not entitled to contribution from the FTCA settlement agreement.

Defendants significantly misconstrue Maryland law and federal common law in arguing

that Plaintiffs' claims seek a double recovery barred by the one satisfaction rule. Defendants'

Memorandum for MTD/MSJ at 13-14. The one satisfaction rule does not apply in this case

because the Defendants are not entitled to any contribution from Plaintiffs' FTCA settlement

agreement. Although Maryland law likely controls the analysis of this issue pursuant to 16

U.S.C. § 457,[3] Plaintiffs prevail under both Maryland law and federal law.[4]

---

[3] *Ferebee v. Chevron Chem. Co.*, 736 F.2d 1529, 1534 (D.C. Cir. 1984) ("The federal act was passed in an effort to put tort victims on federal land on an equal footing with those injured just outside the boundaries of the federal enclave, *see* 69 CONG. REC. 1486 (1928) (statement of Senator Walsh); it is implausible to ascribe to a Congress so intended a contrary aim to saddle tort victims on federal land with the consequences of outdated legislation.").

[4] "It is well settled that a party seeking contribution or indemnification under a federal statute like [16 U.S.C. § 457] must demonstrate that such a right (1) is created by Congress, either

9

**1. The government is not a joint tortfeasor because it did not admit liability in the FTCA settlement agreement.**

Maryland's "version of the Uniform Contribution Among Tort-Feasors Act [(UCATA)]

altered the common law so that a release of one joint tort-feasor,[5] did not discharge all."

*Spangler v. McQuitty,* 449 Md. 33, 72 (2016) (citing Cts. & Jud. Proc. § 3-1404;[6] *Morgan v.*

*Cohen,* 309 Md. 304, 315-16 (1987); *Martinez v. Lopez,* 300 Md. 91, 102 (1984); *Swigert v.*

*Welk,* 213 Md. 613, 619 (1957)). Under UCATA, "a plaintiff is not necessarily made whole

simply because he settles with one of several joint or concurrent tortfeasors – [rather,] he is

entitled to pursue them segmentally and (until there *is* a judgment rendered) to collect as much as

he can from each." *Hartlove v. Bedco Mobility, Inc.,* 72 Md. App. 208, 213 (1987) (emphasis in

original). However, "one who is not determined a joint tort-feasor is not subject to contribution

under the Act; without an admission or adjudication of liability, a party who enters into a release

is deemed a volunteer, not a joint tort-feasor." *Scapa Dryer Fabrics, Inc. v. Saville,* 418 Md.

496, 529 (2011) (quoting *Jacobs v. Flynn,* 131 Md. App. 342, 375 (2000)). "Where the settling

parties specify in the release that the settling party shall not be considered a joint tort-feasor,

monies paid on account of such settlement will be considered merely volunteer payments; a non-

settling defendant judicially determined to be liable will not be entitled to a reduction of the

---

explicitly or implicitly; or (2) lies in federal common law." *Mitchell Rubenstein & Assocs., P.C.*
*v. Sunrise Credit Servs.,* Civil Action No. PX 16-2497, 2017 U.S. Dist. LEXIS 1253, at 11-12
(D. Md. Jan. 5, 2017) (citation omitted).
[5] "'Joint tort-feasors' means two or more persons jointly or severally liable in tort for the same
injury to person or property, whether or not judgment has been recovered against all or some of
them.'" MD. CODE ANN., CTS. & JUD. PROC. § 3-1401.
[6] "A release by the injured person of one joint tort-feasor, whether before or after judgment, does
not discharge the other tort-feasors unless the release so provides, but it reduces the claim against
the other tort-feasors in the amount of the consideration paid for the release or in any amount or
proportion by which the release provides that the total claim shall be reduced, if greater than the
consideration paid." MD. CODE ANN., CTS. & JUD. PROC. § 3-1404.

damages awarded against it on account of the consideration paid by the settling party." *Id.* at 529-30 (citations omitted). In this case, the government specifically denied liability in the FTCA settlement agreement, which means that it did not admit that it is a joint tortfeasor. Compl. Ex. M, ¶4. Thus, the government is a "volunteer" who made "volunteer payments" under the FTCA settlement agreement. *Scapa Dryer Fabrics,* 418 Md. at 529.

### 2. The government is not a joint tortfeasor because it does not share common liability with Defendants.

To establish a right to contribution under Maryland's UCATA, Defendants "must show that: (1) there is a common liability to an injured person in tort, and (2) the joint tortfeasor has by payment discharged the common liability or has paid more than his or her pro rata share thereof." *Konover Constr. Corp. v. ATC Assocs.,* No. MJG-10-2801, 2012 U.S. Dist. LEXIS 59497, at 37-38 (D. Md. Apr. 27, 2012) (citing *Richards v. Freeman,* 179 F. Supp. 2d 556, 560-561 (D. Md. 2002)).

### a. Defendants do not share common liability with the government for the Maryland claims because the government is immune under the *Feres* doctrine.

Defendants do not share common liability with the government because the government enjoys immunity under the *Feres* doctrine from Plaintiffs' informed consent claims under Maryland law. *Feres v. United States,* 340 U.S. 135, 146 (1950) ("[T]he Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service."). "Maryland courts have interpreted the UCATA to embody the principle that 'contribution from a third party defendant is predicated on his or her direct liability to the plaintiff.'" *Kelly v. Fullwood Foods, Inc.,* 111 F. Supp. 2d 712, 715 (D. Md. 2000) (quoting *Montgomery County v. Valk Mfg. Co.,* 317 Md. 185, 193 (1989)). "In other words, 'there is no right of contribution where the injured person has no right of action

11

against the third party defendant.'" *Id.* "Therefore, when the alleged tortfeasor enjoys immunity

from the plaintiff's claim, no claim to contribution exists because there is no 'common

liability.'" *Id.* In this case, the government asserted that the "lack of informed consent and

survival action are not actionable as the injuries alleged arise out of activity incident to Plaintiff

LCDR Dowling's military service."[7] Ex. 12 at 14. Because of the government's immunity

under the *Feres* doctrine, which it did not waive with the FTCA settlement agreement, there is no

common liability between the Defendants and the government for the claims based in Maryland.

*Kelly*, 111 F. Supp. 2d at 715; *Vulcan Materials Co. v. Massiah*, 645 F.3d 249, 255-56 (4th Cir.

2011) (holding defendant liable for all damages under the *Feres* doctrine even though the court

found that the government was 80% at fault for the servicemember's death); *see also*

*Stencel Aero Engineering Corp. v. United States*, 431 U.S. 666 (1977).

> **b. Defendants do not share common liability with the government for the
> Washington wrongful birth claim because they are not liable for the same damages.**

Because the damages for the Maryland claims and for the Washington wrongful birth

claim are not the same, Defendants do not share common liability with the government.

"Common liability exists when two or more actors are liable to an injured party <u>for the same</u>

<u>damages</u>, even though their liability may rest on different grounds." *Parler & Wobber v. Miles*

*& Stockbridge, P.C.*, 359 Md. 671, 687 (2000) (citations omitted) (emphasis added). Under

---

[7] The FTCA Administrative Denial of Claims provides the following:
> To the extent your clients' causes of action are based on allegations that [J.A.D.]'s death
> from Pentalogy of Cantrell was caused by DNA fragmentation from the Paxil LCDR
> Dowling was prescribed, then the genesis of those injuries is from the alleged injury to
> the service member and is barred by *Feres*. *See Mins v. United States*, 155 F.3d 445, 449
> (4th Cir. 1998); *Hinkie v. United States*, 715 F.2d 96, 98 (3d Cir. 1983); *Laswell v. Brown*,
> 683 F.2d 261, 269 (8th Cir. 1982); *Monaco v. United States*, 661 F.2d 129, 133 (9th Cir.
> 1981); and *Ortiz v. United States*[,] 786 F.3d 817 (10th Cir. 2015).

Compl. Ex. L.

Washington law, wrongful birth damages provide compensation for the "mental anguish and emotional stress suffered by the parents during each child's life[, but requires that the] emotional benefits to the parents resulting from the birth of the child should be considered in setting the damages." *Harbeson v. Parke-Davis, Inc.*, 98 Wash. 2d 460, 477 (1983). Significantly, there is no cap on non-economic damages under Washington law. *Sofie v. Fibreboard Corp.*, 112 Wn.2d 636, 669 (Wash. 1989). In comparison, and by example, a Maryland wrongful death action allows much broader damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, filial care, attention, advice, counsel, training, guidance, or education where applicable for the death of a child. MD. CODE ANN., CTS. & JUD. PROC. § 3-904. There is no offset for the emotional benefits of having a child. More importantly, Maryland imposes caps on non-economic damages. MD. CODE ANN., CTS. & JUD. PROC. § 3-2A-09 (informed consent claims), § 11-108 (negligent misrepresentation and constructive fraud claims). Therefore, because the damages are not the same for Washington's wrongful birth claim and the Maryland claims, there is no common liability between the government and Defendants.

### 3. There is no right to contribution under federal common law.

Even if the government was a joint tortfeasor, which it is not, there is no right to contribution under federal common law. *Mitchell Rubenstein & Assocs., P.C. v. Sunrise Credit Servs.*, Civil Action No. PX 16-2497, 2017 U.S. Dist. LEXIS 1253, at 13 (D. Md. Jan. 5, 2017) (finding that a defendant's contribution claims failed because, in part, there was no right to contribution under the federal common law). Rather, there is "no rigid rule against overcompensation." *McDermott, Inc. v. Amclyde*, 511 U.S. 202, 218 (1994).[8] "Several

---

[8] See also *Baltimore Neighborhoods, Inc. v. LOB, Inc.*, 92 F. Supp. 2d 456, 475 ("Although many states have codified setoff rules, which incorporate the one satisfaction rule, there is no federal statute addressing a joint tortfeasor's right to a setoff.").

doctrines, such as the collateral benefits rule, recognize that making tortfeasors pay for the damage they cause can be more important than preventing overcompensation." *Id.* Moreover, as in this case, the one satisfaction rule does not apply when "the nonsettling defendant cannot claim credit for a settlement on a cause of action in which he took no part." *Chisholm v. UHP Projects, Inc.*, 205 F.3d 731, 737 (4th Cir. 2000) (citation omitted). Defendants had no role in the wrongful birth claim, the one count that did not implicate the *Feres* doctrine.

### C. Defendants' asserted defenses fail as a matter of law.

Defendants have asserted that the acts or omissions of government employees constitute a superseding cause relieving them of liability, and that J.A.D.'s survival claim is barred by the statute of limitations. Defendants' Memorandum for MTD/MSJ at 15-18, 27-28. Both of these defenses fail as a matter of law.

#### 1. The government's acts or omissions were not a superseding cause.

Under Maryland law, "a superseding cause arises primarily when 'unusual' and 'extraordinary' independent intervening negligent acts occur that could not have been anticipated by the original tortfeasor." *Pittway Corp. v. Collins*, 409 Md. 218, 249 (2009) (quoting *McGowans v. Howard,* 234 Md. 134, 138 (1964)). "Whether the intervening act of a third party suffices as a superseding cause is generally for the trier of fact to determine." *Banks v. Iron Hustler Corp.*, 59 Md. App. 408, 431 (1984). This defense fails for two reasons.

##### a. Defendants have not alleged how government employees were negligent in relying on Defendants' determination to use a particular fertilization procedure.

Within their argument section addressing superseding causes, Defendants asserted "that the government-employed physicians (not Defendants) had the ultimate decision-making authority regarding whether IVF or ICIS was appropriate." Defendants' Memorandum for MTD/MSJ at 16. Even if it were true that government-employed physicians concurred with

14

Defendants' determination to use IVF or ICSI, Defendants have not alleged how such action was unusual, unanticipated, and/or negligent to constitute a superseding cause. *Pittway Corp.*, 409 Md. at 249. Additionally, if Defendants are referencing the failure to provide informed consent by Major John Csokmay, Medical Corps, U.S. Army, his alleged breach was limited to the failure to fully inform Mrs. Dowling of the risks of birth defects related to paternal use of Paxil. Defendants' Memorandum for MTD/MSJ, Ex. 7, ¶¶122-128. Thus, Major Csokmay's negligence cannot serve as a superseding cause because it occurred before Defendants provided the July 6, 2012 Semen Collection and Analysis Form, which serves as the primary basis of Counts II though VIII. To the extent that Defendants are arguing that Major Csokmay's negligence was a superseding cause for any of Defendant A.R.T.'s negligent acts or omissions prior to July 6, 2012, such issue is a question for the trier of fact.

      **b.  Defendants' defense based on the failure to timely diagnose J.A.D.'s birth defects infringes upon a woman's right to choose whether to carry a pregnancy to term.**

Defendants assert that the government's failure to timely diagnose J.A.D.'s birth defects is a superseding cause that relieves them of liability. Defendants' Memorandum for MTD/MSJ at 17-18. As a matter of law, this Court cannot recognize this defense because it would establish precedent that impermissibly infringes on a woman's constitutional right to choose whether to carry her pregnancy to term. *Roe v. Wade*, 410 U.S. 113, 153, 93 S. Ct. 705, 727 (1973) (recognizing as a constitutional right a "woman's decision whether or not to terminate her pregnancy.").[9]  Failing to recognize that this right belongs to a woman, Defendants assert that

---

[9] *See also Cunningham v. Feinberg*, 441 Md. 310, 341 (2015) ("The court determined that the right to seek damages in a wrongful birth action represented clear, strong, and important Maryland public policy, [...] which precluded the State from interfering with the decision of a woman to terminate her pregnancy at any time . . . if the fetus is affected by genetic defect or serious deformity or abnormality." (citations and internal quotation omitted)).

"the Dowlings would have terminated the pregnancy in question" conveniently ignoring that the complaint against the government intentionally pled that "Mrs. Dowling was precluded from making an informed decision about whether to terminate the pregnancy prior to viability." Defendants' Memorandum for MTD/MSJ, Ex. 7, ¶183. Plaintiff's wrongful birth claim was derivative of Mrs. Dowling's claim, and should not preclude a father from advancing independent claims against the Defendants. Regardless, even if government had timely diagnosed J.A.D.'s birth defects and Mrs. Dowling had elected early termination, Defendants would still be liable for damages. *Smith v. Borello*, 370 Md. 227, 247-48 (2002) (allowing damages related to the early termination of a pregnancy caused by another's tortious conduct).

### 2. Defendant A.R.T. cannot assert the statute of limitations as a defense.

Defendant A.R.T. cannot assert the statute of limitations as a defense because it was not a qualified foreign corporation when it incurred liability for J.A.D.'s pain and suffering on October 26, 2013. A foreign corporation "may not benefit from any statute of limitations in an action at law or suit in equity: (1) Arising out of a contract made or liability incurred by the foreign corporation [...] while doing business without having qualified or registered[.]" MD. CODE ANN., CTS. & JUD PROC. § 5-204 (emphasis added). In 2011, Defendant A.R.T. registered as a qualified foreign corporation in Maryland based on its incorporated status in the District of Columbia. Ex. 18 (Defendant A.R.T.'s Foreign Corporation Qualification). In 2013, however, Defendant A.R.T. was no longer qualified as a foreign corporation. First, the District of Columbia revoked Defendant A.R.T.'s status as a corporation on September 16, 2013, which rendered its qualification as foreign corporation ineffective. Ex. 19 (Revocation of D.C. Corporate Status); Md. Code Ann., Corps. & Ass'ns § 7-203 (a condition of qualification is "good standing in the jurisdiction where it currently is organized."); Md. Code Regs. 18.04.03.01

("The corporation's right to do business in Maryland cannot have been forfeited or its registration or qualification rendered ineffective."). Second, Defendant A.R.T. failed to file a property return in 2013, which meant that it was no longer qualified as foreign corporation. Ex. 20 (Defendant A.R.T.'s foreign corporation filing history); Md. Code Regs. 18.04.03.01 ("The corporation shall have filed all annual reports required by Tax-Property Article, § 11-101, Annotated Code of Maryland."). Thus, as a matter of law, Defendant A.R.T. may not assert the statute of limitations as a defense to J.A.D.'s survival claim.

      **3.   J.A.D.'s survival claim is tolled by the Servicemembers' Civil Relief Act.**

      J.A.D.'s survival action is tolled under the Servicemembers' Civil Relief Act (SCRA). 50 U.S.C.S. § 3936 (tolling any period limited by law for any action brought "by or against the servicemember or the servicemember's heirs" during the military member's period of service); *Mitchell v. Phillips*, 58 Pa. D. & C.2d 314, 318-19 (C.P. 1972) (concluding that the claims of a minor brought by his father and guardian were not barred by the statute of limitations on account of the predecessor to 50 U.S.C.S. § 3936). Under the liberal construction afforded to the SCRA, this tolling provision should apply to a father in the military who asserts his civil right to submit a claim on behalf of his deceased child. *Sibert v. Wells Fargo Bank, N.A.*, 863 F.3d 331, 337 (4th Cir. 2017) (The SCRA "is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation.") (citations omitted).

    **D.  Defendant A.R.T. breached the duty to obtain informed consent by failing to provide information material to Plaintiff's decision to consent to ISCI.**

      Defendant A.R.T. failed to meet its duty to obtain informed consent by not providing information that was material to Plaintiff's decision whether to use ICSI or standard IVF.

      **1.  The duty to provide informed consent is owed by healthcare providers, not just physicians, under Maryland law.**

The Maryland Court of Appeals holds that "an informed consent claim may be asserted by a patient in the absence of a battery or affirmative violation of the patient's physical integrity, because it is the duty of a health care provider to inform a patient of material information, or information that a practitioner 'knows or ought to know would be significant to a reasonable person in the patient's position in deciding whether or not to submit to a particular medical treatment or procedure.'" *McQuitty v. Spangler*, 410 Md. 1, 5 (2009) (quoting *Sard v. Hardy*, 281 Md. 432, 444 (1977)). The *McQuitty* court framed this duty as applying to healthcare providers,[10] not just physicians. *Id.* at 19 (holding that "under the informed consent doctrine, a healthcare provider has a duty to provide a patient with all information material to the patient's assessment about whether to submit to a particular therapy or procedure.").[11] This duty requires healthcare providers to disclose "the nature of the ailment, the nature of the proposed treatment, the probability of success of the contemplated therapy and its alternatives, and the risk of unfortunate consequences associated with such treatment." *Sard*, 281 Md. at 440. "The gravamen of an informed consent claim, therefore, is a healthcare provider's duty to communicate information to enable a patient to make an intelligent and informed choice, after full and frank disclosure of material risk information and the benefit of data regarding a proposed treatment." *McQuitty*, 410 Md. at 22.

This duty also extends to a healthcare provider's employer or when the employer

---

[10] Md. Cts. & Jud. Proc. § 3-2A01 ("'Health care provider' means [...] a physician, an osteopath, an optometrist, a chiropractor, a registered or licensed practical nurse, a dentist, a podiatrist, a psychologist, a licensed certified social worker-clinical, and a physical therapist, licensed or authorized to provide one or more health care services in Maryland.").

[11] *See also* Md. Code Ann., Health–Gen. § 18-338.1 (recognizing that "a physician, nurse, or designee of a health care facility" may obtain informed consent); Md. Health Occ. § 8-6C09 (recognizing that a licensed midwife can be responsible for obtaining informed consent); Md. Code Regs. 10.27.25.05 (recognizing that the standard of care for a nurse includes obtaining informed consent for a cosmetic procedure).

18

assumed the duty to obtain informed consent. *Grp. Health Asso. v. Blumenthal*, 295 Md. 104, 114, 453 A.2d 1198, 1204 (1983) (holding that Md. Cts. & Jud. Proc. § 3-2A-02 "encompasses a claim of malpractice by a health care provider, whether it forms the basis of a suit against that health care provider or a suit against a non-health care provider under the doctrine of *respondeat superior*."); *Robertson v. Iuliano*, Civil Action No. RDB-10-1319, 2012 U.S. Dist. LEXIS 174320, at 8 (D. Md. Dec. 10, 2012) (finding the duty to obtain informed consent extended to an employer when it assumed the duty or the healthcare provider was an agent of employer).

### 2. Defendant A.R.T. assumed the duty to obtain informed consent.

The undisputed facts show that Defendant A.R.T. assumed the duty to provide informed consent in the 2012 Government Contract. Compl. Ex. D; *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988) ("We have held that obligations to and rights of the United States under its contracts are governed exclusively by federal law."). Tracking the duty to obtain informed consent, Defendant A.R.T. agreed that it would "provide adequate materials for patient education, including information booklets outlining procedures performed, their risks and benefits and the indications for these procedures." Compl. Ex. D, ¶1.6.15. Moreover, Defendant A.R.T. agreed to "meet the rigid requirements of the Society for Assisted Reproductive Technologies (SART)," which provided specific requirements for informed consent. *Id.* at ¶ 1.6.2. In 2012, SART's requirements included the following:

> The concept of informed consent is rooted in medical ethics and has been codified as legal principle. As with all medical procedures and treatments, <u>ART patients have the right to self-determination and must make the final decision as to what is appropriate</u> and acceptable treatment in their particular situation. To comply with this requirement, each prospective patient/couple must be provided with <u>all relevant information</u> necessary to make an informed decision regarding the proposed treatment and must be given the opportunity to ask questions in order to gain a better understanding. It is also important that couples are provided with <u>full information</u> concerning risks, benefits, and alternative procedures [...]. (Emphasis added).

19

Compl. Ex. E at 4.

In execution of the 2012 Government Contract and as relayed to the Dowlings on February 21, 2012, Defendant A.R.T. stated that it was providing informed consent for the laboratory procedures in the 2011 Consent Form, which lists *"The A.R.T. Institute of Washington, Inc. at Walter Reed National Military Medical Center"* at the top of each page.  Ex. 1, ¶12; Compl. Ex. F at 1 ("We realize that this consent form pertains to the laboratory portion of the procedures.").  On information and belief, the 2016 Operating Agreement specifically clarified Defendant A.R.T.'s responsibilities that were in effect in 2012, which included the following: "Obtain informed consent from patients for laboratory-associated procedures." Compl. Ex. P, ¶4.2.13(c).

Additionally, as required by the 2012 Government Contract, Ms. Darshana Naik, a Registered Nurse licensed by the State of Maryland (i.e., a healthcare provider under MD. CODE ANN., CTS. & JUD. PROC. § 3-2A-01), was responsible for "coordination and management of patient education," which included providing adequate materials that outlined procedures performed, their risks and benefits, and the indications for these procedures.  Compl. Ex. D, ¶1.6.13.  In other words, Ms. Naik was responsible for ensuring that Defendant A.R.T. and its employees obtained informed consent for the laboratory portions of the fertilization procedure.

**a. Defendant A.R.T. is estopped from asserting that it does not have a duty to obtain informed consent.**

"Quasi-estoppel, or estoppel by benefit [...] provides that when a party takes and retains benefits under a transaction or instrument, which it has the right to accept or reject, that party's retention of the benefits acts to ratify the transaction or instrument such that the party cannot avoid its obligation or effect under the transaction or instrument by later taking a position inconsistent with the transaction or instrument[...]."  *Hedgepeth v. Parker's Landing Prop.*

20

*Owners Ass'n*, 388 F. App'x 242, 247 (4th Cir. 2010) ) (citations omitted). In this case, Defendant A.R.T. received financial compensation in exchange for, among other responsibilities, obtaining informed consent from patients under the 2012 Government Contract. Ex. 1, ¶¶21, 27. Moreover, Defendant A.R.T.'s argument contradicts its current agreement with the government reflecting its continuing responsibility to "Obtain informed consent from patients for laboratory-associated procedures." Compl. Ex. P, ¶4.2.13(c). Thus, Defendant A.R.T. may not assert that it did not have a duty to obtain informed consent under the doctrine of quasi-estoppel.

**b. Defendant A.R.T. selected the ICSI fertilization procedure.**

Defendant A.R.T. claims that it merely provided a recommendation to government physicians who had the ultimate decision-making authority for a particular fertilization procedure. Defendants' Memorandum for MTD/MSJ at 5. The facts, however, demonstrate that Defendant A.R.T. was responsible for selecting the fertilization procedure for patients. First, in the 2012 Government Contract, Defendant A.R.T. specifically agreed that the government "retains no control over professional aspects of the services rendered, including by example, the Contractor's professional medical judgment, diagnosis, or specific medical treatments." Complaint, Ex. D, ¶52.237-7(a). In this case, "diagnosis" relates to whether Plaintiff had low initial motility whereas "specific medical treatments" pertains to whether standard IVF or ICSI would be used to achieve fertilization. Second, based on privileged investigation, the government determined that Defendant A.R.T. was responsible for selecting the ICSI fertilization procedure:

> To the extent these causes of action are from allegations that the DNA fragmentation and risks of birth defects were increased by in vitro fertilization with intracytoplasmic sperm injection, the decision on the manner by which the in vitro fertilization was carried out was made by a third party, Assisted Reproductive Technologies Institute of Washington [sic]. The United States is not responsible for the acts and/or omissions of independent contractors. See 28 U.S.C. § 2671.

21

Compl. Ex. L; Ex. 11 (Email from Ms. Hilde Perlstein, FTCA Government Attorney). Lastly,

Defendant A.R.T.'s current contention is contradicted by its "Frequently Asked Questions"

handout, which indicates, irrespective of physician input, that it will charge the patients for ICSI

if the male patient does not submit to Defendant A.R.T.'s sperm testing and analysis. Ex. 13,

¶27 ("If you have documented sperm on a recent analysis and elect not to have this testing

completed you will be charged automatically for the more costly ICSI procedure."). Regardless,

even if government physicians accepted Defendant A.R.T.'s determination to use ICSI,

Defendant A.R.T. still had a duty to obtain informed consent for the laboratory procedures of the

fertilization process.

### 3. Defendant A.R.T. breached the duty to obtain informed consent.

#### a. Defendant A.R.T. failed to provide material information concerning ICSI on the 2011 Consent Form.

Defendant A.R.T. argues that it obtained informed consent with the 2011 Consent Form

based on the declaration submitted Ms. Naik. Defendants' Memorandum for MTD/MSJ at 21.

To the extent that Ms. Naik is providing an opinion that such informed consent was adequate,

Plaintiff objects because Defendant A.R.T. has not made a sufficient showing that she is

qualified to offer such opinion. Fed. R. Civ. Proc. 56(c)(2). Rather, the undisputed facts show

that Defendant A.R.T.'s 2011 Consent Form was misleading and failed to include information

that was material to Plaintiff's decision to consent to ICSI.

First, the 2011 ICSI Consent Form misleadingly states that "[w]hile there seems to be no

higher overall incidence of congenital malformations in children born after ICSI with using

either regular sperm or epididymal or testicular spermatozoa, the risk cannot be totally ruled

out." Compl. Ex. F at 7. To the contrary, on February 21, 2012, the date that Defendant A.R.T.

presented the 2011 Consent Form to Plaintiff, the available scientific and medical literature actually indicated that using ICSI increases the risk for embryological development failure, spontaneous abortion, and birth defects, especially when ICSI is used with sperm impacted by significant abnormal DNA fragmentation. Exs. 6 - 10. Defendant A.R.T. now acknowledges this higher risk in the 2015 Consent Form, which states that the "current medical literature suggests may be a higher incidence of congenital malformations in children born after ICSI with using either regular sperm or epididymal or testicular spermatozoa." Compl. Ex. O at 7. The "current medical literature" supporting this admission was available before J.A.D.'s conception, a fact that is not disputed by Defendant A.R.T.

Second, the 2011 ICSI Consent Form states that "the ICSI procedure is performed when the sperm may not be judged adequate to achieve fertilization using conventional insemination (putting the eggs and sperm closely together)." Compl. Ex. F at 6. This form, however, does not list the parameters and the values used for judging whether sperm is adequate to achieve fertilization. *Id.* Defendant A.R.T. only provided the parameters that it uses in 2013 after requiring Plaintiff and Mrs. Dowling to sign releases for their medical records. Ex. 1, ¶43. In addition, Defendant A.R.T. purports to use the World Health Organization (WHO) reference values for semen analysis, but it does not disclose that it actually uses higher values than the reference values in the *WHO laboratory manual for the examination and processing of human semen* (2010, 5th and current Edition) (2010 WHO Semen Manual). Compl. Ex. N at 13; Defendant's Memorandum for MTD/MSJ, Ex. 11.

**b. Defendant A.R.T. failed to provide material information when it presented the July 6, 2012 Semen Collection and Analysis Form.**

On July 6, 2012, Defendant A.R.T. selected "ICSI" due to "Low Initial Motility" on the July 6, 2012 Semen Collection and Analysis Form. In doing so, Defendant failed to provide

23

information that was material to Plaintiff's decision to consent or reaffirm consent to use ICSI on the July 6, 2012 Semen Analysis Form. The sole dispute of material fact does not alter the legal conclusion that Defendant A.R.T. breached the duty to obtain informed consent.

      i.    **Undisputed material facts demonstrate that Defendant A.R.T. breached the duty to obtain informed consent from Plaintiff.**

Defendant A.R.T. breached the duty to obtain Plaintiff's informed consent to use ICSI on the July 6, 2012 Semen Collection and Analysis Form. First, it is undisputed that, prior to J.A.D.'s fertilization, Defendant A.R.T. failed to inform Plaintiff that his initial motility level of 48% listed on July 6, 2012 was actually above Defendant A.R.T.'s threshold for using ICSI due to low initial motility (40%). Ex. 1, ¶¶82, 88. Second, it is undisputed that Defendant A.R.T., prior to J.A.D.'s fertilization, failed to inform Plaintiff that his two initial motility results in September 2011 (39%) and March 2012 (39%) were both within the WHO lower reference range for motility (40(38-42)). Ex. 1, ¶76; Compl. Ex. N. Third, it is undisputed that Defendant A.R.T.'s Laboratory Director admitted that a "subsequent third semen analysis reflecting an above 40% motility measurement would not change A.R.T.'s recommendation of ICSI for claimant because of his history of low <u>initial</u> motility measurements on September 13, 2011 and March 7, 2012." Defendants Memorandum for MTD/MSJ, Ex. 11, ¶7) (underline in original); *McQuitty*, 410 Md. at 20 ("The law does not allow a [healthcare provider] to substitute his judgment for that of the patient in the matter of consent to treatment."). Fourth, it is undisputed that Defendant A.R.T. failed to inform Plaintiff that using ICSI with sperm impacted by significant abnormal DNA fragmentation creates a higher risk of birth defects. Ex. 6; Compl. Ex. F. Lastly, it is undisputed that Defendant A.R.T., prior to J.A.D.'s fertilization, failed to informed Plaintiff that it selected "ICSI" due to "Low Initial Motility" based on Plaintiff's previous semen sample provided on March 7, 2012. Ex. 1, ¶81.

### ii.    The only dispute of material fact does not alter the conclusion that Defendant A.R.T. breached the duty to obtain informed consent.

The only dispute of material fact is Defendant A.R.T.'s post hoc rationalization that it relied on Plaintiff's semen progression result in selecting "ICSI" due to "Low Initial Motility" on the July 6, 2012 Semen Collection and Analysis Form.  In making this point, Defendants rely on a fertility blog, which is hearsay, and Defendant Cullingford, a former employee of Defendant A.R.T. who lacks any apparent authority to make a representation on behalf of Defendant A.R.T. Defendants' Memorandum for MTD/MSJ at 5, Ex. 13.   Plaintiffs dispute and object to Defendant Cullingford's affidavit on several grounds.

First, Defendant A.R.T. has offered shifting accounts as to why it selected "ICSI" due to "Low Initial Motility" on the July 6, 2012 Semen Analysis Form, which creates a genuine dispute of material fact. *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 647 (4th Cir. 2002) (finding "inconsistent post-hoc explanations for its employment decisions is probative of pretext" to be resolved by a jury); *Laws v. HealthSouth N. Ky. Rehab. Hosp. Ltd. P'ship*, 508 F. App'x 404, 410 (6th Cir. 2012) (finding "shifting explanations and justifications" are sufficient to create a genuine dispute of fact).   Both Defendant A.R.T.'s legal counsel and Dr. Aida James, Defendant A.R.T.'s Laboratory Director, wrote or declared that the determination to use ICSI on the July 6, 2012 Semen Analysis Form was based on Plaintiff's September 13, 2011 and March 7, 2012 semen analysis results. Ex. 1, ¶¶68-72; Defendant A.R.T.'s Memorandum for MTD/MSJ, Ex. 11.[12]   Additionally, both confirmed that the designation of "Low Initial Motility" was based on Plaintiff's sperm motility results of "39" from September 2011 and March 2012, and not the sperm progression results.  *Id.*

---

[12] Plaintiff objects to paragraphs 8 and 9 of Dr. James' first affidavit based on hearsay and lack of personal knowledge. *McLaughlin v. Copeland*, 435 F. Supp. 513, 520 (D. Md. 1977).  A physician did not counsel Plaintiff on using ICSI based on any semen analysis results.

25

Second, Defendant A.R.T. previously indicated to a government physician that it uses the term "low initial motility" when the initial motility (not initial progression) is below the threshold of 40%. Compl. Ex. J (Lieutenant Commander Rebecca Chason, Medical Corps, U.S. Navy, Assistant IVF Director at WRNMMC, wrote "I have confirmed [...] that low initial motility is a term used by our lab when the prewash motility is <40%.").

Third, even if Defendant A.R.T. had relied on Plaintiff's semen progression results from July 6, 2012, Plaintiff's motility and progression results on July 6, 2012 were at or above the thresholds from the 2010 WHO Semen Manual and Defendant A.R.T.'s own values:

| 2010 WHO Semen Manual Parameters | 2010 WHO Lower Reference Values | Defendant A.R.T.'s 2012 Semen Parameters | Defendant A.R.T.'s 2012 Normal Values (per Dr. James' representations) | LCDR Dowling's July 6, 2012 semen analysis results |
|---|---|---|---|---|
| Total Motility (PR + NP %) | 40 (38-42) | Motility (%) | ≥40 | 48 |
| Progressive Motility (PR%) | 32 (31-34) | Progression (%) | ≥40 | 40 |

Compl. Exs. H & N; Defendants' Memorandum for MTD/MSJ, Ex. 11.

As such, this Court, after conferring with the parties, has the discretion to grant partial summary judgment and find that Defendant A.R.T. breached its duty to obtain informed consent. Fed. R. Civ. Proc. 56(f).

### 4. Defendant A.R.T. proximately caused Plaintiffs' damages.

If the material information discussed in the preceding section had been provided, Plaintiff would have withheld consent to use ICSI to achieve fertilization. Ex. 1, ¶¶84-93. With respect to the causality requirement for informed consent, Maryland law provides the following:

> [T]he causality requirement in cases applying the doctrine of informed consent is to be resolved by an objective test: whether a reasonable person in the patient's position would have withheld consent to the surgery or therapy had all material risks been disclosed. If disclosure of all material risks would not have changed the decision of a reasonable

26

person in the position of the patient, there is no causal connection between nondisclosure and his damage. If, however, disclosure of all material risks would have caused a reasonable person in the position of the patient to refuse the surgery or therapy, a causal connection is shown. Under this rule, the patient's hindsight testimony as to what he would have hypothetically done, *though relevant*, is not determinative of the issue.

*Sard*, 281 Md. at 449-451 (emphasis added). The Maryland Court of Appeals "acknowledge[s] that '[r]isks, benefits, collateral effects, and alternatives normally must be disclosed routinely,' [but it] also ha[s] made clear that 'other considerations ... may also need to be discussed and resolved.'" *Goldberg v. Boone*, 396 Md. 94, 125 (2006) (quoting *Dingle v. Belin*, 358 Md. 354, 370 (2000)). "What those 'other considerations' may be is determined by what information would be material to a reasonable person in the position of the patient having to decide whether to submit to the medical treatment in issue; causality is demonstrated if a reasonable person in the patient's position would have withheld consent to the surgery or therapy had that material data been disclosed." *Id.* (citing *Sard*, 281 Md. at 444; *Dingle*, 358 Md. at 369).

In this case, Defendants do not dispute the materiality of the information in the preceding section. Defendant A.R.T.'s 2015 Consent Form acknowledges that there is higher risk of birth defects with ICSI, and it has not disputed that the scientific and medical literature supporting this contention was available prior to J.A.D.'s conception. Moreover, Defendants do not dispute that the semen analysis results and the accompanying legend are material to a patient's decision to either use IVF or ICSI to conceive a child. Neither Plaintiff nor a reasonable person would have consented to ICSI if it were disclosed, among other material information discussed above, that ICSI had a higher risk of birth defects and that ICSI was not actually required due to low initial motility. Thus, Plaintiff has demonstrated probable causal relation between Defendant A.R.T.'s failure to obtain informed consent to use ICSI for fertilization and J.A.D.'s birth with his accompanying birth defects. *Jacobs v. Flynn*, 131 Md. App. 342, 355 (2000) ("The law requires

proof of probable, not merely possible, facts, including causal relations. ... But, sequence of events, plus proof of *possible* causal relation, may amount to proof of *probable* causal relation, in the absence of evidence of any other equally probable cause.").[13]

### E. Maryland law recognizes Plaintiffs' wrongful death claim and survival action.

Maryland allows a claim for wrongful death by the parents of a deceased child, MD. CODE ANN., CTS. & JUD. PROC. § 3-901, and a survival action by the estate of the deceased child, CTS. & JUD. PROC. § 6-401 and EST. & TRUSTS § 7-401. For a wrongful death claim, "[a]n action may be maintained against a person whose wrongful act causes the death of another." CTS. & JUD. PROC. § 3-902. A wrongful act "means an act, neglect, or default including a felonious act which would have entitled the party injured to maintain an action and recover damages if death had not ensued." *Id.* Similarly, for a survival action, a "cause of action at law, whether real, personal, or mixed, survives the death of either party." CTS. & JUD. PROC. § 6-401. In this case, J.A.D. could have maintained a claim against Defendant A.R.T. had he survived.

#### 1. Failure to obtain informed consent is as wrongful act.

Under the section heading "No wrongful act[,]" Defendants argue that Plaintiffs' wrongful death claim fails because it "does not involve an act of medical negligence on the part of Defendant A.R.T." Defendants' Memorandum for MTD/MSJ at 24. Defendants misread the law because "a cause of action under the informed consent doctrine is properly cast as a tort action for negligence[.]" *Sard*, 281 Md.at 440 n.4; *see also McQuitty*, 410 Md. at 18 ("Breach of informed consent and medical malpractice claims both sound in negligence, but are separate, disparate theories of liability."). Thus, the failure to obtain informed consent is a wrongful act.

#### 2. The duty to obtain informed consent extends to intended beneficiaries.

---

[13] *See also Ex. 6; Westberry v. Gislaved Gummi AB*, 178 F.3d 257 (4th Cir. S.C. 199 9); *CSX Transp., Inc. v. Miller*, 159 Md. App. 123, 206 (Md. Ct. Spec. App. 2004).

Defendant A.R.T. owed a duty to J.A.D., as an intended beneficiary of the material information that should have been provided to his father.[14] Informed consent is based on a general standard of reasonable conduct, not a professional standard of care. *Sard*, 281 Md. at 444 ("Whether a physician has fulfilled his duty to disclose, then, is to be determined by reference to a general standard of reasonable conduct and is not measured by a professional standard of care."). As such, Defendant A.R.T.'s duty is delineated by general principles of tort law. *Muthukumarana v. Montgomery County*, 370 Md. 447, 510 (Md. 2002) ("In negligence cases, duty is always the same--to conform to the legal standard of reasonable conduct in the light of the apparent risk.") (citation and internal quotations omitted).[15] To determine "whether the defendant is under any obligation for the benefit of" a child that it conceived, the courts consider several factors:

> "the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved."

*Muthukumarana*, 370 Md. at 511 (quotations in original).

In this case, Defendant A.R.T.'s failure to provide material information resulted in Plaintiff consenting or affirming consent to ICSI, which resulted in Mrs. Dowling's eggs being

---

[14] "Imputed parental reliance to an infant as a form of indirect reliance is not a novel concept, and has been taken even further in other jurisdictions." *White v. Kennedy Krieger Inst.*, 221 Md. App. 601, 638 n.15 (2015) (citing *Ruffing v. Union Carbide Corp.*, 764 N.Y.S.2d 462 (N.Y. App. Div. 2003) (finding that a child could maintain a fraud action against his mother's employer when the fraudulent statements caused the child harm while the child was *in utero*)).

[15] *Compare Dehn v. Edgecombe*, 384 Md. 606, 621 (Md. 2005) (Noting that "although the common law does not foreclose the possibility of imposing a duty of care in the absence of a doctor-patient relationship to a third party who never received treatment from the doctor, it will not do so except under extraordinary circumstances.").

29

injected with a pipette to conceive J.A.D. As it pertains to foreseeability, Defendant A.R.T. acknowledged that ICSI presented a risk of birth defects on 2011 Consent Form; it just did not accurately disclose the level of such risk. From a proximity standpoint, Defendant A.R.T. was purposefully assisting the Dowlings in their efforts to conceive J.A.D. and was inserting a pipette into the embryo at the moment of conception. As for moral blame, Defendant A.R.T. was in a position to prevent harm to J.A.D. and the associated harm to Plaintiff for having a child born with severe birth defects. *Compare Reed v. Campagnolo*, 332 Md. 226, 240 (Md. 1993) ("Even though the physical forces producing Ashley Nicole's birth defects were already in operation at the time of the alleged negligence of the physicians, under the chain of causation alleged by the Reeds the physicians could have prevented the harm to the parents."). From a public policy perspective, allowing J.A.D. to assert a claim would ensure that fertility clinics adhere to their obligation to ensure each couple has "all relevant information necessary to make an informed decision regarding the proposed treatment" to bring a child into the world. Compl. Ex. E at 4.

Thus, general principles of tort law demonstrate that Defendant A.R.T. owed a duty to J.A.D. as an intended beneficiary of the information that should have been presented to his father. To hold otherwise "would promote the undesirable result of permitting a [healthcare provider], or someone similarly situated, to lie with impunity to parents so long as it is the child that suffers the harm." *White v. Kennedy Krieger Inst.*, 221 Md. App. 601, 640 (2015).

### 3. Maryland recognizes that a child born alive can maintain an action for a tort that impacts any part of that child's prenatal life.

Defendants argue that J.A.D. could not maintain a claim "because J.A.D. was not in existence during the time of Defendant A.R.T.'s involvement – July 2012." Defendants' Memorandum for MTD/MSJ at 30. In essence, Defendant A.R.T. argues that J.A.D. was not viable when it completed the tort of performing ICSI without informed consent. The Maryland

30

Court of Appeals would reject this argument, "finding the concept of viability has no role in a case, such as this, where the child is born alive." *Grp. Health Asso. v. Blumenthal*, 295 Md. 104, 116 (1983). The *Blumenthal* court provided:

> "If a child born after an injury sustained at any period of its prenatal life can prove the effect on it of a tort, it would have a right to recover.
> * * *
> "'It would be contrary to every principle of right and justice, which are the very essence of law, to deny such rights to the injured child.'"

*Id.* at 117 (quoting *Hornbuckle v. Plantation Pipe Line Company*, 212 Ga. 504 (1956)).

Moreover, the *Blumenthal* court specifically agreed with *Wolfe v. Isbell*, 291 Ala. 327 (1973),[16] which held that "recovery based on prenatal injury should not be affected by the degree of maturity reached by the embryo at the moment of the wrongful act." *Id.* at 328. The *Wolfe* court provided the following rationale:

> While the decisions dealing with the problem before us are certainly not without divergent views, the more recent authorities emphasize that there is no valid medical basis for a distinction based on viability, especially where the child has been born alive. These proceed on the premise that the fetus is just as much an independent being prior to viability as it is afterwards, and that from the moment of conception, the fetus or embryo is not a part of the mother, but rather has a separate existence within the body of the mother.

*Id.* at 330-31. Science has advanced to the point that an embryo can now exist outside of a mother's womb. In this case, Defendant A.R.T. was committing a wrongful act (i.e., performing ICSI without informed consent) during and immediately after J.A.D.'s conception as evidenced by the presence of the pipette in the embryo. Such wrongful act constituted an injury or an impact to J.A.D. that proximately caused him to be born with fatal birth defects. Therefore,

---

[16] *Grp. Health Asso. v. Blumenthal*, 295 Md. at 119 ("Agreeing with the decisions in *Torigian* and *Wolfe*, we conclude that a cause of action lies for the wrongful death of a child born alive who dies as a result of injuries sustained while *en ventre sa mere*.").

J.A.D. could have maintained an action against Defendant A.R.T.[17]

### 4. A certificate of qualified expert is not required for informed consent claims.

Defendant A.R.T. argues that a certificate of merit is required to be filed before the

Health Care Alternative Dispute Resolution Office (HCADRO) "if Plaintiff attempts to reframe

his allegations to include some act of medical negligence on the part of Defendant A.R.T[.]"

Defendants' Memorandum for MTD/MSJ at 27.   In making this argument, Defendants states

that "Plaintiff has not alleged any wrongful act on the part of Defendants that proximately caused

J.A.D.'s death." *Id.*  First and once again, Defendants misread the law because informed consent

is a type of negligence that qualifies as a wrongful act.  Second, a certificate of merit is not

required for informed consent claims, MD. CODE ANN., CTS. & JUD. PROC. § 3-2A-04(b)(1),

and/or, as in this case, when the healthcare provider, an embryologist, is not a covered healthcare

provider subject to HCADRO's jurisdiction.[18]

### 5. J.A.D.'s survival action is not a claim for wrongful life.

Defendants argue that J.A.D.'s survival action is a claim for wrongful life barred by

*Kassama v. Magat,* 368 Md. 113 (2002).  Defendants' Memorandum for MTD/MSJ at 31.  The

fundamental underpinning of the *Kassama* opinion was that "the disability itself, from which the

---

[17] Alternatively, given the rationale in *Group Health Asso. v. Blumenthal* and precedential
authority in sister states, Maryland's common law would recognize a preconception tort under
the facts of this case.  California, Colorado, Florida, Georgia, Illinois, Indiana, Michigan,
Missouri, New Jersey, and Oklahoma have all recognized the viability of a preconception tort
claim.  See, e.g., *Lynch v. Scheininger,* 162 N.J. 209, 232-233 (N.J. 2000); *Renslow v. Mennonite
Hospital,* 67 Ill. 2d 348 (1977); *Empire Casualty Co. v. St. Paul Fire and Marine Ins. Co.,* 764
P.2d 1191 (Colo.1988); *Walker v. Rinck,* 604 N.E.2d 591 (Ind.1992); *Monusko v. Postle,* 175
Mich. App. 269 (1989); *Lough v. Rolla Women's Clinic, Inc.,* 866 S.W.2d 851 (Mo.1993);
*Graham v. Keuchel,* 1993 OK 6 (Okla.1993); *Torres v. Sarasota County Pub. Hosp. Bd.,* 961 So.
2d 340, (Fla. Dist. Ct. App. 2d Dist. 2007), *Bergstreser v. Mitchell,* 577 F.2d 22, 25 (8th Cir. Mo.
1978); *McAuley v. Wills,* 251 Ga. 3, 6 (Ga. 1983); *Turpin v. Sortini,* 31 Cal. 3d 220, 230-231
(Cal. 1982).  Such issue, however, should be certified to the Maryland Court of Appeals.
[18] Defendant made a similar meritless argument before HCADRO.  Exs. 14-16.

expenses will flow, was not caused by the defendant." *Id.* at 137.   In this case, Defendant A.R.T. caused the injury by using ICSI to conceive J.A.D., which led to him being born with fatal birth defects.  Defendant A.R.T. was in a position to prevent the fatal birth defects that led to J.A.D.'s death, but failed to do so by not obtaining informed consent from Plaintiff.

### 6.  J.A.D.'s survival action is timely filed.

J.A.D.'s survival action is tolled under Maryland and federal law.[19]  J.A.D.'s claim was tolled until April 25, 2017 when Defendant A.R.T. disclosed that it knowingly and recklessly selected "ICSI" due to "Low Initial Motility" based on Plaintiff's March 7, 2012 semen analysis results instead of Plaintiff's July 6, 2012 semen analysis results. MD. CODE ANN., CTS. & JUD. PROC. § 5-203; *see also Geisz v. Greater Balt. Med. Ctr.*, 313 Md. 301, 334, (1988) (Concluding that a "finding that the representations were recklessly false, results in the possibility of tolling under § 5-203 and defeats summary judgment on the wrongful death claim.").  Similarly, J.A.D.'s survival action is equitably tolled because Defendant A.R.T. deceived Plaintiff or concealed from Plaintiff that it selected ICSI based on Plaintiff's March 7, 2012 semen analysis results instead of Plaintiff's July 6, 2012 semen analysis results. *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 663 (D. Md. 2011) ("Equitable tolling applies where a defendant, by active deception, conceals a cause of action.").  Moreover, Defendant A.R.T. is equitably estopped from asserting the statute of limitations defense because it did not disclose or admit the intentionally false nature of the statements on the July 6, 2012 Semen Collection and Analysis Form until April 25, 2017. *Prelich v. Med. Res., Inc.*, 813 F. Supp. 2d 654, 665 (D. Md. 2011).

**F.  Defendants committed negligent misrepresentation to secure Plaintiff's' consent on the July 6, 2012 Semen Collection and Analysis Form.**

---

[19] J.A.D.'s claim was tolled during his lifetime, until his estate was opened, and arguably longer based on Plaintiff's military service. MD. CODE ANN., CTS. & JUD. PROC. § 5-201.

"A defendant makes a false statement for the purposes of negligent misrepresentation when 'the defendant (1) did not know the facts he should have known, failed to investigate facts, or investigated them with less than reasonable care; (2) knew the facts but used words or other communicative devices poorly; or (3) unreasonably failed to make statements at all, or failed to make statements needed to clarify the plaintiff's understanding.'" [20] *Smith v. Integral Consulting Servs.*, Civil Action No. DKC 14-3094, 2016 U.S. Dist. LEXIS 114692, at 20-21 (D. Md. Aug. 26, 2016) (quoting *Griesi*, 360 Md. at 15) (citing *Lubore v. RPM Assocs., Inc.*, 109 Md. App. 312, 340-41, 674 A.2d 547 (1996) (finding negligent misrepresentation where representations were not "purely false as stated" but "became materially misleading by virtue of material facts that [defendants] negligently failed to disclose")). For the reasons discussed above, Defendants' statement that Plaintiff's semen sample on July 6, 2012 was of "ICSI" standards due to "Low Initial Motility" was false and/or materially misleading by virtue of material facts that Defendants failed to disclose. In so doing, Defendants made a negligent misrepresentation to secure Plaintiff's consent to use ICSI on July 6, 2012.

### G. Defendants committed constructive fraud to secure Plaintiff's consent for ICSI on July 6, 2012 Semen Collection and Analysis Form.

Defendants argue that Plaintiff has failed to demonstrate a confidential relationship as a prerequisite for proving constructive fraud. Defendants' Memorandum for MTD/MSJ at 34. "Constructive fraud is a breach of legal or equitable duty which, irrespective of the moral guilt of

---

[20] To assert a claim for negligent misrepresentation, Plaintiff must demonstrate the following elements: "(1) the defendant, owing a duty of care to the plaintiff, negligently asserts a false statement; (2) the defendant intends that his statement will be acted upon by the plaintiff; (3) the defendant has knowledge that the plaintiff will probably rely on the statement, which, if erroneous, will cause loss or injury; (4) the plaintiff, justifiably, takes action in reliance on the statement; and (5) the plaintiff suffers damage proximately caused by the defendant's negligence." *White v. Kennedy Krieger Inst.*, 221 Md. App. 601, 641 (2015) (quoting *Lloyd v. Gen. Motors Corp.*, 397 Md. 108, 135-36 (2007)).

the fraud feasor, the law declares fraudulent because of its tendency to deceive others, to violate

public or private confidence, or to injure public interests." *Ellerin v. Fairfax Sav., F.S.B.*, 337

Md. 216, 236 n.11(1995) (citations omitted). "Neither actual dishonesty of purpose nor intent to

deceive is an essential element of constructive fraud." *Id.* "For constructive fraud's purposes, a

plaintiff and a defendant are in a confidential relationship where the defendant 'has gained the

[plaintiff's] confidence . . . and purports to act or advise with the [plaintiff]'s interest in

mind.'" *Thompson v. UBS Fin. Servs., Inc.*, 443 Md. 47, 70 (2015) (quoting *Buxton v. Buxton*,

363 Md. 634, 654 (2001)). As discussed previously, Defendant A.R.T. and by extension, its

employees, undertook the duty to obtain informed consent from Plaintiffs under this 2012

Government Contract. This creates a confidential relationship. *See, e.g, Geisz v. Greater Balt.*

*Med. Ctr.*, 313 Md. 301, 321 (1988) ("the relation of physician and patient is a confidential

relationship" citing *Sard v. Hardy* – Maryland's seminal case for informed consent). Defendants

analyzed Plaintiff's semen, selected a fertilization procedure based on that semen analysis, and

then took sperm from that semen to inject it into Mrs. Dowling's oocytes for the purpose of a

conceiving a child. If such actions do not create a confidential relationship, "then God save the

Republic." *Schism v. United States*, 316 F.3d 1259, 1301 (Fed. Cir. 2002).

**V. CONCLUSION**

For the reasons above, this Court should grant Plaintiffs' Motion for Partial Summary

Judgment, and it should deny Defendants' Motion to Dismiss and/or for Summary Judgment.

**WHEREFORE**, I, Plaintiff, in my personal capacity and individually, as personal representative

of the Estate of J.A.D., and as a surviving parent of J.A.D., request that this Court enter an Order

granting Plaintiffs' Motion for Partial Summary Judgment, and denying Defendant's Motion to

Dismiss and/or for Summary Judgment.

Respectfully submitted,


Jonathan E. Dowling
Pro Se, Individually and on behalf of the Estate of
J.A.D.
jonathan.e.dowling@gmail.com
443-610-3795
6612 Thurlton Drive
Alexandria, VA 22315

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of May, 2018, I served the foregoing MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND RESPONSE TO DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGMENT via first class mail, postage prepaid upon:

Stephen M. Cornelius (Fed. Bar # 29975)
ECCLESTON & WOLF, P.C.
Baltimore-Washington Law Center
7240 Parkway Drive, 4th Floor
Hanover, MD 21076-1378


Jonathan E. Dowling